# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Kelly Miller, | ) |
|     Plaintiff, | ) |
|     v. | )    Civ. No. 18-cv-1101 (APM) |
| Marriott International LLC *et al.*, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Kelly Miller, appearing *pro se*, has sued Marriott International, Inc., the D.C. Metropolitan Police Department ("MPD"), D.C. Attorney General Karl Racine, D.C. Superior Court Judge Fern Saddler, and the D.C. Superior Court Domestic Violence Unit. Am. Compl., ECF No. 34, at 1. This case is before the court on Marriott International's Motion to Dismiss, ECF No. 35, and the District of Columbia Defendants' Motion to Dismiss, ECF No. 38. The defendants assert that the Amended Complaint fails to state a claim upon which relief can be granted. For the reasons explained below, both motions are granted.

### II. BACKGROUND

#### A. Factual Basis for Claims Against Marriott International and MPD

For present purposes, Plaintiff's factual allegations are accepted as true. Plaintiff "is currently disabled and has been certified disabled for the last two years." Am. Compl. at 7. She "requires" a cane "to walk about." *Id.* Plaintiff holds the "cane in her right hand for mobility" and "pull[s] her luggage" with her left hand, thereby leaving nothing "extra . . . for safely carrying

beverages or other purchased articles." *Id*. Since 2014, Plaintiff has rented a Post Office Box located at the U.S. Postal Service in the lower level of the Marriott-owned Renaissance Hotel ("Hotel") in the District of Columbia. *Id*. This action stems from an incident at the Hotel, which resulted in the issuance of a notice barring Plaintiff from the Hotel's lobby for five years. *See* Barring Notice, ECF No. 63.

On the morning of April 3, 2018, while waiting for the Post Office to open at 8:30 a.m., Plaintiff left her luggage "next to the seat she would be sitting in" and proceeded to "the 'Starbucks' restaurant to retrieve a beverage to consume[.]" Am. Compl. at 7. Plaintiff returned to her seat and was in the process of accessing the Hotel's "free WI-FI Service" when she was approached by "Hotel Loss Prevention Officer Patrick McBride," who "in a hateful authoritative manner demand[ed] to know if the luggage beside the Plaintiff . . . belonged" to her. *Id*. at 7–8. Plaintiff answered "yes," and McBride told her that the Hotel's cameras had captured her "luggage unattended." *Id*. at 8. "Plaintiff . . . explained, what was clearly obvious to all, that with [her] open disability Plaintiff was not able to manage [her] luggage as well as a beverage therefore, as numerous past previous acts allowed[,] Plaintiff placed the luggage beside the chair and proceeded to utilize the 'Starbucks' and immediately returned to claim [her] luggage." *Id*. McBride then asked Plaintiff if she was a paid guest of the Hotel, "to which [she] responded she was not a paid guest[;] however, she was a paid patron of the businesses located within" the Hotel, *i.e.*, the Starbucks and the U.S. Postal Service. *Id*. McBride "immediately informed Plaintiff in a condescending and loud tone that she would not be allowed to access her postal box" and "demanded Plaintiff leave the hotel immediately or he would call the police to have [her] removed[.]" *Id*. Plaintiff asked if "all other patrons in the room would be questioned [about] their guest status" or whether the "demand" for her "to exit the hotel or be arrested" was "a targeted

2

discriminatory act[.]" *Id*. Plaintiff then "sat down and waited for the police as [she] had committed no Criminal act to have her lawful rights removed or threatened." *Id*.

When MPD officers arrived, Plaintiff "refused" their request to produce identification and was "advised" that "if she continued to refuse to leave," she would be arrested. *Id.* at 8. The MPD officers declined Plaintiff's request to "view the video and inform [her] of what Criminal act they [saw her] committing" to justify the demand that she "exit or be incarcerated." *Id*. at 9. Plaintiff "instructed the Defendants" that she was going to the restroom "and would return shortly." *Id*. When she returned, "the two Defendants had drafted a 'document' . . . citing 'loitering and disturbing the business' as cause for removal and threat of incarceration." *Id*. "Within the document[,] defendants placed a 5 year Stay Away or the Plaintiff . . . would be incarcerated." *Id*. An MPD officer escorted Plaintiff to her Post Office Box and while there "instructed the Postal worker" that "if Plaintiff ever came to access her postal box again[,] the postal worker was to call the police and have Plaintiff arrested." *Id*.

Plaintiff claims that Marriott "thru their paid employees . . . unlawfully conspired to engage in unlawful targeted 'joint activity' of malicious unified collusion with" MPD "and its employees . . . to target and threaten loss of freedom by incarceration of Plaintiff . . . for performing the identical Constitutional act of Freely accessing [her] . . . United States Postal box for business and personal 'commerce'[.]" *Id*. at 7 (quoting 18 U.S.C. § 1951).

### B. Factual Basis for Additional Claims Against the D.C. Defendants

#### 1. MPD

Based upon events seemingly unrelated to the foregoing, Plaintiff accuses MPD of retaliation by "refusing to uphold" her rights. *Id.* at 9. Plaintiff alleges that in September 2015, she was "violently physically assaulted by Carlton Warren," who "was incarcerated for [the]

3

assault[.]" Am. Compl. at 9. Apparently, Plaintiff filed a civil action in Superior Court and in June 2018 was awarded a judgment against Warren for $10,500. At some point, Plaintiff also obtained a stay-away order.[1] Meanwhile, on May 16, 2018, Plaintiff sued MPD "for targeted abuse of power under the color of the law as well as withholding constitutional rights and protection." *Id*. Thereafter, on May 26, 2018, "D.C. Police openly stated they would not arrest Carlton Warren for his blatant violation of the Stay Away," and in June 2018, Warren "continued to Stalk Plaintiff on three other occasions all of which the D.C. Police refused to [e]nforce the lawful Stay Away." *Id*. at 9-10. "As a direct result of" Warren's "continued violations of lawful Stay Away supported by the DC Police," Plaintiff "was granted a CPO" against Warren on September 10, 2018. *Id*. at 10.

 2. *Attorney General Racine*

Plaintiff next accuses D.C. Attorney General Karl Racine of "targeted direct retaliation." *Id*. at 10. In 2015, Plaintiff sued two security guards in D.C. Superior Court "for unlawfully threatening [her] for entering the courthouse with a bogus BOLO." *Id*. The D.C. Attorney General's Office represented the security guards even though their employer was a privately owned business and despite Racine "being repeatedly informed" that the guards did not qualify for such representation. *Id*.

Also, in 2015, "the DC Attorney General's Office violated Plaintiff's Constitutional rights by unlawfully filing a praecipe refusing to review any filings submitted to the Domestic Violence court." *Id*. The Office refused to prosecute despite the physical signs of abuse, *i.e.*, "black eyes" and bruised legs "for 5 weeks," as well as the admissions to rape by "all three assailants[.]" *Id*. In addition, the D.C. Superior Court Crime Victims Program had "placed Plaintiff in the Safe House

---

[1] *See* D.C. Code §§ 16-1003-05 (proceedings for civil protection).

4

program," and paid expenses for lodging, meals transportation and storage "for each incident meriting the violence Plaintiff suffered and proving the DC Attorney General's Office was unconstitutionally withholding Plaintiff's right to lawful assistance." *Id*.

In September 2016, Plaintiff "was violently raped." She "filed with the DC Police and DC Attorney General's office requesting assistance in arresting Lawrence Allen Watkins for committing the violent act against Plaintiff." *Id.* Both "refused to arrest" Watkins, who "was continually stalking Plaintiff[.]" *Id*. Plaintiff sued Watkins in D.C. Superior Court and "won by Default as . . . Watkins appeared on two occasions and then failed to continue to appear and defend himself." *Id*. On September 15, 2017, Plaintiff obtained a stay-away order against Watkins and "still the DC Attorney's office and the DC Police refused to arrest" Watkins. *Id*.

On May 23, 2018, Plaintiff "noticed the DC Attorney General's office and Karl Racine . . . that [she] had in fact filed federal and would be also filing DC Superior court litigation for Constitutional violations. Less than 24 hours later on [May 24, 2018], Plaintiff was subjected by direct retaliation and harassment by the DC Police threatening to incarcerate [her] if [she] did not move from the location" where she "had slept on the sidewalk for over 2 years." *Id*.

### 3. *Judge Saddler*

In 2015, "Judge Fern Saddler unlawfully drafted [an] 'Order' while [she] was not the sitting judge in [Plaintiff's] active case at the time stating that Plaintiff could never file in Domestic Violence unit without leave from the court[,]" and that the Domestic Violence Unit referenced Judge Saddler's order when it "refused to allow Plaintiff to file CPO[.]" *Id*. at 11.

### C. **Claims and Relief Sought**

The Amended Complaint recites a litany of constitutional provisions and federal statutes that Plaintiff asserts form the basis for her claims. *See id.* at 4–5. Her actual claims appear to be

5

two: (1) deprivation of civil rights and retaliation under 42 U.S.C. § 1983, and (2) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1964.[2]

As for relief, Plaintiff seeks to enjoin Marriott International "from ever utilizing a bogus Bar Notice utilized by defendant's employee to target, threaten and withhold Plaintiff's rights under the Constitution"; the "immediate removal from employment of Marriott International LLC staff participating in targeting Plaintiff and abusing their positions to instill fear of incarceration . . ."; and $75 million in damages. *Id.* at 12. With respect to the D.C. Defendants, Plaintiff seeks $75 million in damages from each. *Id.* at 13. Additionally, she asks for (1) the "immediate removal of the DC Police officers abusing their power . . . to unlawfully target and intimidate and threaten Plaintiff with incarceration[,] as well as refusing Plaintiff law assistance when being violated by Carlton Warren"; (2) the prosecution of Lawrence Allen Watkins for rape and the prosecution of Carlton Warren "for contempt of court and fraud . . . ."; and (3) the "immediate removal of Fern Saddler from the bar" and "from employment of the D.C. Superior Court with no pension and no retirements" and an "immediate investigation" of the Domestic Violence Unit. *Id*.

---

[2] Plaintiff cites a host of criminal statutes in her Amended Complaint, *see* Am. Compl. 4–6, but none gives rise to a private cause of action, *see Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 77 (D.C. Cir. 2017) (stating that "a 'bare criminal statute,' with no other statutory basis for inferring that a civil cause of action exists, is insufficient to imply Congress intended to create a concomitant civil remedy") (quoting *Cort v. Ash*, 422 U.S. 66, 79-80 (1975)). It is established that sections 242, 245, 1513, 1701, and 1951 of the federal criminal code—each of which Plaintiff cites—provide "no private right of action[.]" *Crosby v. Catret*, 308 Fed. App'x 453 (D.C. Cir. 2009) (per curiam); *see Pope v. Thornburgh*, 978 F.2d 744 (D.C. Cir. 1992) (per curiam) ("Appellant's claims under 18 U.S.C. §§ 241, 242, 245 . . . fail, because no private right of action exists under those statutes."); *Kissi v. U.S. Dep't of Justice*, 444 Fed. App'x 457 (D.C. Cir. 2011) (per curiam) (affirming dismissal of complaint "on the ground that 18 U.S.C. §§ 1951 and 1957 do not provide a private cause of action"); *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 262 (D.D.C. 2013) (noting that "[n]o private cause of action is recognized under [18 U.S.C. § 1513]"); *Radford v. Marshall*, No. 14-cv-0527-KD-C, 2015 WL 9827735, at *7 (S.D. Ala. Dec. 10, 2015), report and recommendation adopted, No. 14-cv-00527-KD-C, 2016 WL 204498 (S.D. Ala. Jan. 15, 2016) ("Nothing in the text of § 1701 or § 1702 expressly or impliedly creates a private right of action, and federal courts have consistently refused to recognize civil claims for mail-tampering or obstruction crimes.") (citing *Brett v. Brett*, 503 Fed. App'x. 130 (3rd Cir. 2012) (other citations omitted)).

## III. LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6) for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015), and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, the court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). When

performing the "context-specific task" of deciding whether a plausible claim has been stated, a court must "draw on its judicial experience and common sense[.]" *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### A. Plaintiff Fails to State Claims against the D.C. Defendants

#### 1. Non sui juris *defendants*

In her opposition to the D.C. Defendants' motion to dismiss, Plaintiff insists that "the PROPER" identities of the D.C. defendants are 'The DC Metropolitan Police Department, Karl Racine, Fern Saddler and the DC Superior Court Domestic Violence Unit.'" Pl.'s Supp'l Mem. in Opp'n to D.C. Defs.' Mot. at 1, ECF No. 49-1 (capitalization in original); *see also* Pl.'s Admin. Record Directing Immediate Correction of Court Language Used in Identification of Defendant DC Metropolitan Police Department, ECF No. 37 (stressing "[a]t **NO TIME** has Plaintiff . . . filed litigation against '**THE DISTRICT OF COLUMBIA**' an entirely separate entity" and demanding immediate correction of "**ANY and ALL** documents Erroneously entered . . . with the wrongful defendant titled 'THE DISTRICT OF COLUMBIA' . . . to read . . . '**DEFENDANT', 'THE DC METROPOLITAN POLICE DEPARTMENT**'") (emphases in original)); Pl.'s Praecipe, ECF No. 40 (demanding same). Plaintiff's unwavering position compels dismissal of certain D.C. Defendants.

"[I]n the absence of a statutory provision providing otherwise, bodies within the District of Columbia government are not suable as separate entities." *Hinton v. Metro. Police Dep't, Fifth Dist.*, 726 F. Supp. 875, 875 (D.D.C. 1989); *see Kundrat v. D.C.*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (listing cases from "this court and the local courts of the District of Columbia [that] have consistently applied this rule to dismiss claims against governmental agencies or departments of the District of Columbia"). It is established that MPD is such an entity, as is D.C. Superior Court.

8

*See Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015) ("MPD is a subordinate entity of the District of Columbia that is incapable of being sued in its own name") (citing cases); *Kundrat*, 106 F. Supp. at 8 (dismissing "the complaint against the Superior Court defendants" on *non sui juris* ground). Accordingly, neither MPD nor the Domestic Violence Unit of D.C. Superior Court is "a proper party to this action[.]" *Hinton*, 726 F. Supp. at 875.[3]

### 2. Judicial immunity

Judges are entitled to absolute immunity from suits predicated on actions taken in their official capacities, unless such actions "are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (citation omitted). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). Plaintiff's claim against Judge Saddler is predicated on the issuance of an order, which is a quintessential judicial act for which Judge Saddler enjoys absolute immunity. The court therefore dismisses the claims against her.

### 3. Attorney General Racine

Plaintiff faults Attorney General Racine for failing to prosecute certain individuals for alleged felony acts committed against her. *See* Am. Compl. at 10 (alleging a "violent rape"). But save certain misdemeanor offenses, "[a]ll . . . criminal prosecutions shall be conducted in the name of the United States by the United States attorney for the District of Columbia or his assistants[,]" D.C. Code Ann. § 23-101(c), not the D.C. Attorney General. Even if Plaintiff were the victim of crimes subject to prosecution by the D.C. Attorney General's Office, any claim against the Attorney General in his personal capacity would fail because prosecutors enjoy "absolute

---

[3] Even if liberally construed, Plaintiff does not state a claim against the District of Columbia under section 1983 or civil RICO. Her pleading contains no facts that would support municipal liability. *See generally Grissom v. D.C.*, 853 F. Supp. 2d 118, 122–23 (D.D.C. 2012). Nor can the District of Columbia be held liable under the federal civil RICO statute. *See BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 27 (D.D.C. 2015).

9

immunity . . . from liability for the decision to prosecute[.]" *Moore v. Valder*, 65 F.3d 189, 192 (D.C. Cir. 1995); *cf. Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (noting that a "§ 1983 action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute") (parenthesis and citation omitted)).

Plaintiff also cannot advance a cause of action against Attorney General Racine under section 1983 for retaliation.[4] To advance a retaliation claim, Plaintiff's factual allegations must establish that (1) she "engaged in activity protected" by the Constitution or federal law, (2) the defendant knowingly "impermissibly infringed on [her] right to engage in the protected activity" for no legitimate reason, *Garcia v. D.C.*, 56 F. Supp. 2d 1, 5 (D.D.C. 1998) (citations omitted), and (3) "a causal connection [exists] between [the] defendant's retaliatory animus and [the] subsequent injury." *Hartman*, 547 U.S. at 259. Here, Plaintiff alleges that, within 24 hours of filing suit as to which she directly noticed the Attorney General by email, MPD officers "threat[end]" her with incarceration if she refused to move from the location on the sidewalk where she slept. Am. Comp. at 10. The claimed causal connection between her filing suit and giving notice to the Attorney General and the actions of the MPD officers is implausible on its face. Plaintiff offers no reason whatsoever why the Attorney General would be motivated to take retaliatory action against Plaintiff for her filing of a civil suit. Such suits are filed every day. There is no reason to believe that the Attorney General would have violated his oath of office merely because Plaintiff filed an action, presumably against the District. Second, Plaintiff makes no allegation that the Attorney General could have directed MPD officers to act at his behest. MPD officers are duty-bound "to respect and obey the Chief of Police as the head and chief of the police

---

[4] The court agrees that Plaintiff's claim premised on the D.C. Attorney General's representation of the security guards she sued in Superior Court "makes no sense" as "no law prohibit[s] such representation[.]" D.C. Def.'s Mem. at 6; *see Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984) (a claim lacking a "factual and legal basis for the asserted wrong" is subject to dismissal as frivolous).

force," not the D.C. Attorney General, and their conduct is "subject to the rules, regulations, and general orders of the Council of the District of Columbia and the Mayor of the District of Columbia." D.C. Code Ann. § 5-127.03. The complaint states no alleged fact that the Attorney General had the authority or ability to direct the MPD officers to threaten her with arrest. At bottom, Plaintiff's retaliation claim against the Attorney General is simply so implausible that the court will not allow it to proceed.

### B. Plaintiff Fails to State Claims against Marriott International

Plaintiff lists her claims as arising under the First, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, as well as 42 U.S.C. § 1983 and the following provisions of the federal criminal code, 18 U.S.C. §§ 242, 245, 1513(e), 1701, 1951(a), and 1961-68. Am. Compl. at 3-4. As noted, *supra* n. 2, none of the federal criminal statutes provide a private right of action. And, while Plaintiff's civil RICO and section 1983 claims rest on valid statutory grounds, she fails to state a cause of action under either against Marriott International.

#### 1. Civil RICO

Sections 1961–1968 of Title 18 of the U.S. Code codify the Racketeer Influenced and Corrupt Organizations Act, which creates a "private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable" under section 1962. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). To that end, a plaintiff asserting a claim under RICO must factually allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." *Zernik v. U.S. Dep't of Justice*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009) (quoting *Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991)).

The RICO statute defines "pattern of racketeering activity" as requiring the commission of at least two predicate racketeering offenses within a ten-year period. *See* 18 U.S.C. § 1961(5). "Predicate offenses satisfying the statute include acts punishable under certain state and federal criminal laws, such as mail and wire fraud." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281 (D.D.C. 2011) (citing 18 U.S.C. § 1961(1)(B)). Here, even if the conduct of Marriott's security officer could be construed as a predicate act of racketeering, Plaintiff alleges only a single act of unlawful conduct, which cannot satisfy the "pattern" requirement. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997) ("[C]ivil RICO requires not just a single act, but rather a 'pattern' of acts."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 256 (1989) (stating that a "single episode . . . can never support a cause of action under RICO") (Scalia, J., concurring). Plaintiff therefore fails to state a civil RICO claim against Marriott.

  2.  *Section 1983*

Section 1983 provides a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. To advance this claim, Plaintiff must establish "both (1) that [s]he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991). In assessing state action, "circuit courts . . . have . . . focused on whether the[ ] defendants are state officials or [as applicable here] have conspired with state

officials in committing the alleged illegal acts." *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005).[5] The Supreme Court instructs that "state action may be found if, *though only if,* there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted) (emphasis added). "The requisite nexus generally exists when a private party acts as an agent of the government in relevant respects." *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 43 (D.C. Cir. 2015). Otherwise, the Constitution "offers no shield against purely private conduct, 'however discriminatory or wrongful.'" *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 42 (D.C. Cir. 2015) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974)).

The court agrees with Marriott that "the summoning of police officers is insufficient as a matter of law to constitute joint action with state actors for purposes of Section 1983." *See* Mem. at 6-7, ECF No. 35-1 (citing cases). In this circuit, moreover, "[i]t is well established that mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983." *Hoai*, 935 F.2d at 313. The D.C. Circuit therefore is likely to join other circuits in holding a private party's call to law enforcement, by itself, does not constitute joint action with a state actor. *See Dye v. Radcliff*, 174 Fed App'x 480, 482-83 (11th Cir. 2006) (joining "other circuits in saying that a private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof") (citing cases from the Second, Fifth, Seventh, and Tenth Circuit Courts of Appeal)). In this case, all Plaintiff alleges is that on April 3, 2018, a Marriott employee

---

[5] The court notes that Plaintiff has not brought a section 1983 claim against the individual MPD officers who removed her from the Hotel.

13

called MPD, whose officers then escorted her from the Hotel. These alleged facts are not sufficient to state a claim against Marriott under section 1983.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted and Plaintiff's Amended Complaint is dismissed. A separate final order accompanies this Memorandum Opinion.

Dated: May 3, 2019

Amit P. Mehta
United States District Judge